UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80416-CIV-MARRA

KEVIN COUDELL HAMLETT, JR.

Plaintiff,

vs.

OWNERS ADVANTAGE, LLC,
WAYNE ARONSON,

Defendants.
_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss (DE 8) Plaintiff's Complaint (DE 1) in accordance with the terms of an arbitration agreement entered into by Plaintiff, Kevin Coudell Hamlett, Jr. ("Plaintiff"), and Defendants, Owners Advantage, LLC ("Owners Advantage") and Wayne Aronson ("Aronson") (collectively, "Defendants"). Plaintiff did not file a response to Defendants' motion and the time period for doing so has passed.[1] The Court has carefully considered the motion and is otherwise fully advised on the premises.

**I. Background**

Plaintiff was employed by Defendant Owners Advantage as a Customer Service Representative beginning on or about May 15, 2008 through on or about February 26, 2013, when his employment with Owners Advantage was terminated. (Aronson Aff. ¶ 4, DE 8-1.) On the date of his termination, Plaintiff was provided with a Severance Agreement and General Release ("Agreement") for his review and execution.[2] (Aronson Aff. ¶ 5; Agreement, DE 8-2.) In consideration for his execution of the Agreement releasing all claims he may have had against

---

[1] On June 7, 2013 the Court ordered Plaintiff to show cause as to why Defendants' Motion to Dismiss should not be granted. *See* DE 9.
[2] Plaintiff and Defendant executed the Agreement on February 26, 2013. *See* DE 8-2.

Defendants, Plaintiff was offered and paid two weeks' salary. (Aronson Aff. ¶ 5; Agreement ¶ 4.) As per the agreement, Plaintiff further acknowledged and agreed that he had "been paid all compensation owed for all hours worked." (Agreement ¶ 7.) The Agreement contained an arbitration provision which, in relevant part, states as follows:

> Any dispute or claim arising out of this agreement will be subject to final and binding arbitration. The arbitration will be conducted by one arbitrator who is a member of the American Arbitration Association (AAA) and will be governed by the Model Employment Arbitration rules of AAA. The arbitration will be held in Boca Raton, Florida and the arbitrator will apply Florida substantive law in all respects. The arbitrator shall have all authority to determine the arbitrability of any claim and enter a final binding judgment at the conclusion of any proceedings. Any final judgment only may be appealed on the grounds of improper bias or improper conduct of the arbitrator.

(Agreement ¶ 16.)

On April 25, 2013, Plaintiff initiated this action to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b). (Compl., DE 1.) Defendants argue that Plaintiff's claims to recover unpaid overtime compensation arise out of the Agreement, are therefore subject to arbitration, and should be dismissed.

## II. Analysis

There is a strong federal policy supporting arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). The validity of an arbitration agreement is generally governed by the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1 *et seq*. One of the purposes of the FAA is to ensure "judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). As such, arbitration agreements must be "rigorously enforce[d]" by the courts. *Id.* at 221.

A court called upon to determine whether arbitration is appropriate must determine (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. *Integrated Sec. Services v. Skidata, Inc.,* 609 F.

Supp. 2d 1323, 1324 (S.D. Fla. 2009); *Home Quality Mgmt., Inc. v. Ace Am. Ins. Co.*, 381 F. Supp. 2d 1363, 1365 (S.D. Fla. 2005). In making these determinations, the Court must keep in mind the strong presumption in favor of arbitration. When in doubt, questions of arbitrability should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25.

### A. Whether a Valid Written Agreement to Arbitrate Exists

The FAA requires that the arbitration agreement be in writing. *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1368 (11th Cir. 2005). Specifically § 2 of the FAA provides that "a [w]ritten provision" to arbitrate shall be enforceable as follows:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Similarly, the FAA's enforcement sections provide for a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition a district court for an order directing that arbitration proceed. 9 U.S.C. § 4. *Caley,* 428 F.3d at 1368. The FAA leaves no place for the exercise of discretion by a court but, instead, mandates that courts direct parties to arbitrate issues as to which an arbitration agreement has been signed. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

In this case, the Arbitration Provision of the Agreement clearly constitutes a written arbitration agreement for the purposes of the FAA, requiring the parties to arbitrate "any dispute or claim arising out of" the Agreement. (Agreement ¶ 16.) It is indisputable that Defendant offered, and Plaintiff accepted, the terms of the Arbitration Provision as both parties executed the Agreement.[3] Furthermore, as a result of well-established federal policy favoring arbitration, the

---

[3] Even though Defendant Aronson did not execute the Agreement in his individual capacity, Plaintiff's claim against Defendant Aronson is also subject to arbitration. *See, e.g., Bolamos v. Globe Airport Security Servs., Inc.,* No. 02-21005-CIV-Moreno, 2002 WL 1839210, *2 (S.D.Fla. May 21, 2002) (recognizing an exception to the general rule

burden is on the party opposing arbitration to prove to the court that arbitration is improper. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26-27 (1999).  In this case, by failing to respond to the motion, Plaintiff has not met his burden.

### B.  Whether Arbitrable Issues Exist

Defendants argue that the Court need not address the issue of whether Plaintiff's claims are arbitrable because the Arbitration Provision calls for the arbitrator to decide that issue.  When parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitratbility, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership,* 432 F.3d 1327, 1332 (11th Cir. 2005) (the incorporation of AAA Rules for commercial arbitration showed that the parties had clearly and unmistakably agreed that the arbitrator would decide the issue of arbitrability).

In this case, the Court finds it was the parties' intent to delegate the issue of arbitrability of the claims to the arbitrator.  The Arbitration Provision specifically provides that "[t]he arbitrator shall have all authority to determine the arbitrability of any claim." (Agreement ¶16.) Additionally, the parties incorporated the Model Employment Arbitration Rules of the AAA, which constitutes clear and unmistakable evidence that the arbitrator should decide the issue of arbitrability. (Agreement ¶ 16.) *See Terminix Intern. Co., LP,* 432 F.3d at 1332-33.  As such, the Court may grant Defendants' Motion to Dismiss the action to allow the arbitrator to determine the arbitrability of Plaintiff's claims.  Nevertheless, the Court will briefly address the issue of whether Plaintiff's claims fall within the scope of the Arbitration Provision.

---

that only parties to an arbitration agreement may enforce its terms when the nonsignatory is an agent of the signatory).

When determining the scope of an arbitration provision, the Court looks to the factual allegations of the complaint and determines whether the claims alleged therein touch and concern matters covered by the arbitration provisions. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).  The Court looks at the parties' intent to submit the dispute to arbitration, starting at the language of the arbitration provision, and construing any doubt in favor of arbitrability in accordance with the strong federal policy favoring arbitration. *See id.* ("Thus, as with any contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.")

Here, the language of the Arbitration Provision clearly encompasses Plaintiff's claims.  As previously noted, the Arbitration Provision states in relevant part that it covers "[a]ny dispute or claim arising out of this agreement." (Agreement ¶ 16.)  The Agreement includes a general release and an acknowledgment and agreement by Plaintiff that he has "been paid all compensation owed for all hours worked." (Agreement ¶¶ 5, 7.)  Although the Arbitration Provision does not specifically state that FLSA claims are arbitrable, Plaintiff's claims fall squarely within the scope of the Arbitration Provision.  There is no question that a dispute over whether Plaintiff is entitled to overtime compensation under the FLSA creates a claim that would arise out of the Agreement. *Cf. Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1059 (11th Cir. 1998) ("an arbitration agreement [need not] specifically list every federal or state statute it purports to cover.").  In sum, after careful consideration of controlling law, the Court finds that Plaintiffs' claims are subject to arbitration.

### C. Waiver of the Right to Arbitration

Finally, this Court must decide whether Defendants' conduct throughout the course of this action constitutes a waiver of the right to arbitration.  "A party may be deemed to have waived its right to arbitrate a dispute 'when a party seeking arbitration substantially invokes the

judicial process to the detriment or prejudice of the other party.' " *Stone v. E.F. Hutton & Co., Inc.,* 898 F.2d 1542, 1543 (11th Cir.1990) (quoting *Miller Brewing Co. v. Fort Worth Distributing Co.,* 781 F.2d 494, 497 (5th Cir.1986)).  "Because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025 (11th Cir. 1982).

There is no evidence in the record to show Defendants exhibited any conduct that constitutes waiver of the right to an arbitral forum.  Defendants promptly filed a motion to dismiss, shortly after the filing of the Complaint. *Id.*  Defendants have not participated in the litigation process, such as engaging in pre-trial discovery, to support a finding of waiver.  The Court therefore finds that Defendants' conduct is not such that they have waived their right to arbitration.

### III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (DE 8) is **GRANTED**.  All pending motions are denied as moot.  The clerk shall **ADMINISTRATIVELY CLOSE THIS CASE**.  Any party may seek leave to reopen this case to enforce any arbitration award that is entered.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of August, 2013.

KENNETH A. MARRA
United States District Judge